**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**DIANE BUJNICKI,**

                                **Plaintiff,**                    **99-CV-0646S(Sr)**

**v.**

**AMERICAN PAVING AND**
**EXCAVATING, INC., GUY BERBUICK and**
**MICHAEL JANCEY,**

                                **Defendants.**

---

### <u>DECISION AND ORDER</u>

        This case was referred to the undersigned by the Hon. William M.

Skretny, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters, including hearing and

disposition of all non-dispositive motions.  Dkt. #49.

        Currently before the Court[1] is the following:

    (1)    Plaintiff's motion to compel the production of documents and
            answers to interrogatories  (Dkt. #82);

    (2)    Defendants' motion to compel responses to discovery demands
            (Dkt. #86);

    (3)    Defendants' motion to compel plaintiff to pay the witness fees for
            depositions of plaintiff's medical witnesses (Dkt. #86);

    (4)    Defendants' motion to preclude the testimony of plaintiff's medical
            witnesses at trial (Dkt. #86); and

    (5)    Plaintiff's motion for leave to move to compel production of
            documents and answers to interrogatories after the deadline for
            making such motions has passed. Dkt. #103.

---

[1] Defendants' motion for summary judgment is pending before Judge Skretny.  Dkt. #111.

For the reasons that follow, plaintiff's motion to compel discovery responses is granted in part; defendants' motion to compel discovery responses is granted in part; defendants' motion to compel plaintiff to pay the witness fees for depositions of plaintiff's expert witnesses is denied; defendants' motion to preclude the testimony of plaintiff's expert witnesses at trial is denied without prejudice; and plaintiff's motion for leave to move to compel discovery responses is denied without prejudice.

## BACKGROUND

Plaintiff's complaint alleges violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.*; violations of the New York State Executive Law § 290 *et seq.* ("Human Rights Law"); and intentional infliction of emotional distress while she was employed with defendant American Paving and Excavating, Inc. ("American Paving"), in 1998.  Dkt. #1.   Given the breadth of the pending discovery disputes, the facts will be set forth as necessary in the course of the Court's analysis.

## DISCUSSION AND ANALYSIS

### Plaintiff's Motion to Compel

Plaintiff moves to compel the defendants to appropriately respond to Plaintiff's First Request for Production of Documents dated October 14, 2002; Plaintiff's First Set of Interrogatories dated October 14, 2002; Plaintiff's Second Request for Production of Documents dated January 27, 2003; and Plaintiff's Second Set of Interrogatories dated January 27, 2003.  Dkt. #82, ¶ 3.

2

Defendants respond that plaintiff has subjected the defendants to an outrageous expense and undue burden by virtue of excessive discovery demands . They note that they have produced 1,637 pages of business records, payroll records and personnel files relating to this matter and have made available numerous additional documents which plaintiff has chosen not to copy and that they have responded to interrogatories in excess of the limits set forth in the Federal Rule of Civil Procedure 33(a) even though plaintiff has conducted more than sixteen depositions.  Dkt. #93, ¶¶ 3, 5.  Defendants urge the Court to take into account that plaintiff's discovery demands often encompass the time period of 1994/1995 through the present with respect to all of defendants' projects, while plaintiff's employment with the defendants lasted six weeks during 1998 and involved work on no more than two projects. Dkt. #93, ¶¶ 5, 9.


Document Demand #1

Plaintiff moved to compel production of the personnel files of six specified individuals, as well as the personnel files of

(G)    Any person who worked on a project to which plaintiff Diane Bujnicki was assigned;

(H)    Any employee of defendant American Paving who has held the position or performed the duties of Flagperson from January 1, 1995 through the present;

(I)    Any employee of defendant American Paving who has held the position or participated in the New York State "on-the-job apprentice" or trainee program from April 1, 1994 through the present;

> (J)  Any employee who held the position of a
> supervisor with defendant American Paving
> from January 1, 1995 through present; and
>
> (K)  Any minority, including, but not limited to any
> woman, who has been employed by defendant
> American Paving from January 1, 1995
> through the present.

Dkt. #82, Exh. A.   Following numerous objections, defendants responded that they

were not in possession of any responsive documents with respect to two of the

specified individuals other than payroll records that had already been produced; that no

person ever held the position of flag person; and that they had already produced all

documents in their possession with respect to employees in the trainee program and

minorities.  Dkt. #82, Exh. E.  Defendants also agreed that original personnel files "for

relevant parties" would be made available at a mutually convenient time. Dkt. #82,

Exh. E.


      By letter dated January 24, 2003, plaintiff objected to defense counsel

"determining which personnel files are relevant."  Dkt. #, Exh. G, p.1.  Plaintiff asserted

that the

> personnel files which were requested will provide relevant
> information which will demonstrate how male and non-
> minority employees were treated preferentially to female and
> minority employees.  This will be evidenced through salary
> information, performance reviews, job duties, training
> provided, and disciplinary write-ups.

Dkt. #82, Exh. G, p.1.   By letter dated February 27, 2003, defendants responded as

follows:

> Plaintiff was employed for not more than six weeks in 1998
> and worked on only two projects.  She worked on the

second project for only one day.  Certainly these circumstances do not warrant the release of confidential files of employees who worked for American Paving from January 1, 1995 to the present as Plaintiff has demanded. Even most employees working in 1998 do not have information in their files even arguably relevant to the matters at issue in this lawsuit or likely to lead to the discovery of admissible evidence.  Accordingly, Defendants do not agree with Plaintiff's counsel's assertions that she has been denied access to personnel files to which Plaintiff is entitled or that the personnel files produced consisted only of the files of Plaintiff and the two individually named Defendants. . . . In fact, [plaintiff's counsel] was provided access to the personnel files of Michele Rhoda, Mary Priday, James Spivey, Luis Cotton, Jennifer DuBois, Michael Jantzi, Diane Bujnicki, Brian Mackey, Tom Hallett and Guy Berberich.  To our knowledge, this includes the personnel files of all the pertinent workers who performed "flagging," all "apprentices" or "trainees" and all minorities employed during the pertinent time frame who might arguably be relevant or likely to lead to the discovery of admissible evidence.  Plaintiff's demand that American Paving overlook the confidential nature of the personnel files of virtually all present and former employees and ignore the privacy rights of these employees – given the nature of the files previously disclosed – is nothing more than a demand to go on a "fishing expedition" at the expense of other people's rights.

Dkt. #82, Exh. I; Dkt. #93, p.8.  Defendants also invited plaintiff to identify a particular

personnel file which they believe should be produced but has not been made available.

Dkt. #82, Exh. I; Dkt. #93, p.8.


Plaintiff concedes that the personnel files of specified individuals have

been produced, but complains that she is not able to specifically identify all of the other

individuals whose personnel files may be relevant, even though she also alleges that a

review of payroll information disclosed by defendants suggests that defendants have

not provided all of the responsive documents.  Dkt. #82, pp.8-11; Dkt. #96, p.3.

Plaintiff also argues that

> the fact that Plaintiff worked for Defendants for a short
> period of time only bolsters Plaintiff's need for the personnel
> files at issue.  But for the conduct of the Defendants, Plaintiff
> could have worked for the Defendants for a long period of
> time.  As such, the work histories, in particular the earnings
> histories, of comparable employees is absolutely necessary
> for Plaintiff to be able to calculate her damages.

Dkt. #96, p.3.


Since it is difficult for the Court to ascertain the extent to which defendants have responded to this document demand, the Court hereby orders defendants to produce (or state that they have already produced), by name, the personnel files of every individual who worked on a project to which plaintiff was assigned as provided in document demand #1(g).  With respect to document demand #1(h), (i), and (k), defendants are ordered to produce (or state that they have already produced), by name, the personnel files of any employee who has performed the duties of flag person, has participated in the New York State "on-the-job apprentice" or trainee program or who is a minority employed by defendants between September of 1996 and September of 2000.  The limitation of disclosure of personnel records of individuals who fall within these categories of employees to a period of two years preceding plaintiff's claims of discrimination and two years subsequent to plaintiff's claims of discrimination is more than sufficient for plaintiff to discover information relevant to her claim of disparate treatment.  With respect to document demand #1(j), defendants are ordered to produce (or state that they have already produced), by name, the personnel files of any employee who held the position of a supervisor with respect to plaintiff.

6

<u>Document Demand #40</u>

Document demand #40 seeks

> All documents relating to each job which required that a
> minority or female employee was employed, including but
> not limited to proposals, bids, job specifications, job
> requirements, contracts, prevailing wage, employment of
> minorities, inspector reports, calendars, job assignments,
> reports to New York State, i.e., progress reports, job costs,
> employee salaries, employee benefits, job hours, employee
> breaks, job incentives, employee lists, subcontractor lists,
> reports from New York State, minority lists, accident reports,
> and/or incident reports.

Dkt. #82, Exh. A.

Defendants responded by objecting that the demand was "overly broad in
that it essentially seeks a large number of [American Paving's] corporate records."  Dkt.
#82, Exh. E.  Notwithstanding these objections, defendants responded that they had
"produced all non-privileged responsive documents pursuant to [American Paving's]
Rule 26(a) initial disclosure and will produce additional documents herewith all relating
to the Plaintiff's employment and projects."  Dkt. #82, Exh. E.

Plaintiff argues that this document demand is "necessary with respect to
assessing Plaintiff's damages in that they demonstrate projects in which Plaintiff could
have worked had she been able to continue her employment" with American Paving.
Dkt. #82, p.12.

Plaintiff's demand is overly broad and, to the extent that plaintiff seeks this
information to calculate damages, speculative.  Plaintiff has demanded and apparently

has received relevant personnel/payroll records to assess her claim of damages by

virtue of separate discovery demands.  Accordingly, plaintiff's motion to compel a

response to this document demand is denied.


Document Demand #50

_____This document demand seeks

> Any and all calendars, diaries, notebooks, dayplanners or
> notes held or prepared by Defendants GUY BERBERICH
> and MICHAEL JANTZI and/or the company calendar for July
> 1998 through the present.

Dkt. #82, Exh. A.


Defendants responded that they were "not in possession of any

responsive documents other than current calendars," and objected to the production of

current documents as irrelevant to the events which transpired in 1998 when the

Plaintiff was employed.  Dkt. #82, Exh. E.  In response to plaintiff's letter questioning

defendants' response to this demand, defendants clarified that

> There are no calendars, diaries, notebooks, day planners or
> notes.  The only exception is current calendar and we see
> no relevance given that your client's claims relate to a period
> covering a six week period in the summer of 1998.

Dkt. #82, Exh. I.


Plaintiff argues that "[t]he current calendars are relevant to assess, among

other things, projects in [sic] which Defendants Berberich and Jantzi have worked.

They are necessary to assess Plaintiff's damages. " Dkt. #82, p.13.

The current calendar(s) are irrelevant to plaintiff's allegations with respect to the conditions of her employment in 1998 and to any assessment of damages. Plaintiff's motion to compel any further response with respect to document demand #50 is denied.

Document Demand #55

_____Document Demand #55 seeks

> Any and all documents, including, but not limited to any calendars, schedules, day planners, correspondence, memoranda or notes reflecting breaks or lunch breaks taken by employees of Defendants for the projects worked on with Plaintiff during the time that Plaintiff was employed with Defendants.

Dkt. #82, Exh. E.

Defendants responded that they had "produced all non-privileged responsive documents pursuant to [American Paving's] Rule 26(a) initial disclosure and will produce additional documents herewith."  Dkt. #82, Exh. E.   In response to plaintiff's letter questioning defendants' response to this demand, defendants clarified that

> There are no calendars, diaries, notebooks, day planners or notes.  The only exception is current calendar and we see no relevance given that your client's claims relate to a period covering a six week period in the summer of 1998.

Dkt. #82, Exh. I.

9

Plaintiff complains that defendants' response is "very convoluted" and demands that defendants be compelled to indicate wether there are any documents being withheld based upon a claim of privilege and to provide any non-privileged documents.  Dkt. #82, p.14; Dkt. #96, p.6.

_____To avoid any claim of confusion, defendants are hereby ordered to supplement their response to this document demand to clearly indicate that they have produced the documents demanded; that there are no documents responsive to this demand; or that they are withholding documents demanded based upon a claim of privilege, in which case they shall produce a privilege log pursuant to Fed. R. Civ. P. 26(b)(5).

Document Demand #58

_____This demand seeks

> Any and all documents, including, but not limited to, any correspondence, memoranda, agreement or contract, from any union whose members participated on any of Defendants' projects from January 1, 1996 through the present.

Dkt. #82, Exh. E.

Defendant responded that they "believes that it has no responsive documents."  Dkt. #82, Exh. E.  In response to plaintiff's follow-up letter concerning this demand, defendants confirmed that "no such documents exist," and directed plaintiff's to deposition testimony confirming that defendant is "not unionized."  Dkt. #82, Exh. I; Dkt. #93, p.9.

Plaintiff argues that it "does seem rather implausible that the Defendants would not have any documents from any union regarding any of the Defendants' projects from January 1, 1996 to the present" and requests the Court to compel defendants "to affirmatively state whether they have possession of any responsive documents."  Dkt. #82, p.15.

The Court accepts defendants' representation that there are no documents responsive to this demand and trusts that the defendants will supplement their response should they discover any responsive documents.  Therefore, plaintiff's motion to compel with respect to document demand #58 is denied.

Remaining Document Demand Issues

With respect to document demands numbered 2, 3, 4, 5, 7, 8, 9, 20, 21, 22, 23, 24, 25, 26, 31, 33, 34, 35, 36, 37, 39, 41, 42, 43, 44, 45, 46, 47, 48, 49, 51, 52, 53, 56, 57, 59, 63, and 64, plaintiff demands that defendants produce those documents defendants indicated they would produce, but have not yet produced.  Dkt. #82, ¶ 4(b). In response to each of these document demands, defendants stated, as relevant to the instant motion, as follows:

> Defendant [sic] has produced all non-privileged responsive documents pursuant to the Defendant's [sic] Rule 26(a) initial disclosure and will produce additional documents herewith.

Dkt. #82, Exh. E.

Although it appears from the motion papers that defendants have produced the documents referenced in their responses, plaintiff is entitled to a response to each document demand.  Accordingly, defendants are hereby ordered to supplement their responses to plaintiff's document demands to clearly indicate that responsive documents have been produced.

Plaintiff also demands that defendants produce the documents specifically identified in their response to document demands numbered 13, 38,[2] 40, and 62, *to wit*, New York State documentation for the Trainee program; documents relating to plaintiff's claims; documents relating to plaintiff's employment and projects; and certified payroll records, respectively.  Again, although it appears that defendants have likely produced these documents, plaintiff is entitled to a response to each document demand.  Accordingly, defendants are hereby ordered to supplement their responses to plaintiff's document demands to clearly indicate that these documents have been produced with respect to each of the afore numbered document demands.

Plaintiff also demands that defendants produce the documents they indicated they would produce but have yet to produce with respect to document demands numbered 60 and 61.  Dkt. #82, ¶ 4(b).  However, defendants response to those demands was that they did not believe that they had any responsive documents.  Dkt. #82, Exh. E.  The Court accepts defendants representation that there are no

---

[2] Plaintiff subsequently asserts that this demand was not a part of Plaintiff's Motion to Compel. Dkt. #96, pp.4-5.

documents responsive to these demands and trusts that the defendants will supplement their response as necessary.  Accordingly, plaintiff's motion to compel with respect to document demand #60 and #61 is denied.

First Set of Interrogatories #4

Interrogatory #4 seeks information regarding any inquiry or investigation into any allegations of sexual discrimination, sexual harassment and/or retaliation from January 1, 1995 through the present.  Dkt. #82, Exh. B.

Defendants objected to the time period and, subject to that objection, indicated that there were no such allegations other than plaintiff's.  Dkt. #82, Exh. F.   In response to plaintiff's letter questioning this response as failing to indicate whether there were any additional claims of discrimination, defendants responded that "Plaintiff is the only employee who has made allegations of sexual discrimination, sexual harassment or retaliation."  Dkt. #82, Exh. G & I; Dkt. #93.

Plaintiff seeks an order compelling defendants to "provide a sworn response which clarifies the time period."  Dkt. #96, p.6.

Defendants are hereby ordered to supplement their interrogatory response to clearly encompass the time frame contained in the interrogatory.

First Set of Interrogatories #6

Interrogatory #6 seeks information regarding individuals employed by defendants as a flag person or "on-the-job apprentice" from January 1, 1996.  Dkt. #82, Exh. B.  Specifically, plaintiff seeks the date of birth, age, last known address and telephone number, date of initial employment, date of termination, reason for termination, initial job classification and starting wage or salary, and job classification to which each employee was promoted.  Dkt. #82, Exh. B.

Defendants objected that no individuals had ever been hired as either a flag person or "on-the-job apprentice," but ultimately identified and produced the personnel files of several individuals who may have performed such duties.  Dkt. #82, p.18.   Plaintiff complains that the information sought in this interrogatory is not contained in the personnel files produced and seeks an order compelling defendants to respond to Interrogatory #6 with respect to each individual identified as having performed the duties of a flag person or "on-the-job apprentice."  Dkt. #82, p.18-19; Dkt. #96, p.7.

The production of personnel records may satisfy the obligation of a party to respond to an interrogatory.  *See* Fed. R. Civ. P. 33(d) ("Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served . . . it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford the party serving the interrogatory reasonable opportunity to

examine, audit or inspect such records and to make copies, compilations, abstracts or summaries").   However, to the extent that the information sought in this interrogatory is not contained in the personnel files produced, defendants shall respond to the interrogatory.

First Set of Interrogatories #7

_____Interrogatory #7 seeks information regarding complaints of sex discrimination from an employee from January 1, 1995 through the present.  Dkt. #82, Exh. B.

Defendants responded by objecting to the time period as unduly long and not relevant to the instant suit.  Dkt. #82, Exh. F.  Subject to that objection, defendants responded that "the Defendant has had no complaints" other than plaintiff's complaint.  Dkt. #82, Exh. F.  In response to plaintiff's letter questioning whether defendants' response encompassed the time period from January 1, 1995 through the present, defendants responded that "[p]laintiff is the only employee who has made a complaint of sex discrimination."  Dkt. #82, Exh. G & I; Dkt. #93.

Plaintiff argues that it is unclear whether Defendants' response related to the entire time period requested in the Interrogatory.  Dkt. #82, p.20.  "To the extent that Defendants' response was not with regard to the time period of January 1, 1995, until the time that Plaintiff was hired," plaintiff requests that Defendants be compelled to respond to the interrogatory.  Dkt. #82, p.20.

15

Defendants are hereby ordered to supplement their interrogatory response to clearly encompass the time frame contained in the interrogatory.

First Set of Interrogatories #13

Although plaintiff's notice of motion seeks an order compelling a response to interrogatory #13, plaintiff does not include any argument with respect to this interrogatory in her motion papers.  Moreover, defendants have responded to this interrogatory without objection.  Dkt. #82, Exh. F.  Therefore, this particular request of plaintiff is denied.

First Set of Interrogatories #17(g)

Interrogatory #17 seeks information regarding defendants anti-discrimination/sexual harassment policy during the time that plaintiff was employed with Defendants.  Dkt. #82, Exh. B.  Subparagraph (g) asked "[w]hether the policy was distributed to Plaintiff, and if so, set forth: (1) The date that the policy was distributed; (2) The manner in which it was distributed; and (3) Whether a signed acknowledgment of receipt was obtained and whether it was placed into Plaintiff's personnel file."  Dkt. #82, Exh. B.

Defendants did not respond to subparagraph (g).  Dkt. #82, Exh. F.  In response to plaintiff's letter requesting a response, defendants responded that they

> believe that Plaintiff received the anti-discrimination/sexual harassment policy when she received the employee handbook.  This would have occurred when she was interviewed and hired as in the case of all employee[s]."

16

Dkt. #82, Exh. G & I.   Plaintiff demands that defendants place this response in an interrogatory response sworn to by their client and provide any information they may have with respect to the specific date that the policy was distributed, the manner in which it was distributed, or whether a signed acknowledgment was obtained with respect to plaintiff.  Dkt. #96, p.7.

Defendants are hereby ordered to supplement their interrogatory response to specifically respond to interrogatory #17(g).

First Set of Interrogatories #18

Interrogatory #18 seeks information regarding "the identity of any union whose members participated on any of Defendants' projects from January 1, 1996 through the present."  Dkt. #82, Exh. B.   Subject to objections, defendants responded that "it is unaware of what unions, if any were involved with other contractors or subcontractors on any of [American Paving's] projects on which it was the General Contractor."  Dkt. #82, Exh. F.  In response to plaintiff's letter questioning this response, defendants reiterated that "there are no unions which were involved with American Paving."  Dkt. #82, Exh. G & I.

Plaintiff argues that "[a]lthough Defendants may not have knowledge with respect to other contractors or subcontractors, Defendants' response fails to provide information with respect to unions which were involved with Defendants' company, [American Paving]." Dkt. #82, p.23.

_____The Court is unable to fathom the relevance of identifying any unions working on projects that American Paving was also working on.  Accordingly, plaintiff's motion to compel any further response to this interrogatory is denied.

First Set of Interrogatories #19

Interrogatory #19 asks defendants to set forth the factual basis for each of defendants' twelve affirmative defenses.  Dkt. #82, Exh. B.  Defendants objected, stating that the interrogatory was "a contention interrogatory and it is in violation of Federal Rule of Civil Procedure 33(a)."  Dkt. #82, Exh. F.

Plaintiff argues that the purpose of the interrogatory "is to narrow the issues in this case by ascertaining the nature of Defendants' affirmative defenses."  Dkt. #82, p.23.   Moreover, to the extent that plaintiff's interrogatories are deemed to exceed the limit provided by Fed. R. Civ. P. 33(a), plaintiff requests that the Court grant plaintiff permission to exceed the limit.  Dkt. #95, p.2; Dkt. #96, ¶ 4.

Fed. R. Civ. P. 33(a) permits a party to serve upon any other party written interrogatories which do not exceed 25 in number, including all discrete subparts.  "Parties cannot evade this presumptive limitation through the device of joining as 'subparts' questions that seek information about discrete separate subjects."  Fed. R. Civ. P. 33 Advisory Committee's Note to 1993 Amendments.

A review of plaintiff's interrogatories establishes that many of the interrogatories contain discreet subparts which, when counted separately, exceed the 25 interrogatories permitted.  For example, interrogatory #19 asks defendants to state the factual basis for each of defendants' twelve affirmative defenses.  Each affirmative defense is a distinct and separate defense and therefore, interrogatory #19 as phrased, attempts to "evade the presumptive limitation" set forth in Fed. R. Civ. P. 33(a).

However, Fed. R. Civ. P. 33(a) affords the Court discretion to permit interrogatories in excess of the initial limit.  In addition, the Court notes that it is not improper to request that a party state the facts that underlie its affirmative defenses. *See Breffka & Hehnke GmbH & Co. v. M/V Glorious Success*, 2003 WL 3145624 (S.D.N.Y. 2003); *Connors v. Pinkerton's, Inc.*, 1999 WL 66107 (D.Conn. 1999). Therefore, defendants shall respond to interrogatory #19.

Second Set of Document Demands #1

This demand seeks

any and all contracts regarding any project, public or private, from 1994 to present, including but not limited to any project in which [American Paving] was either a prime contractor or sub-contractor.

Dkt. #82, Exh. C.   Defendants objected to this demand as unduly burdensome "on the grounds that it would require [American Paving] to produce every contract it has entered into in the past nine years," and on the grounds that such contracts are irrelevant to plaintiff's claim.  Dkt. #82, Exh. J.

Plaintiff argues that the contracts are

relevant to the calculation of plaintiff's damages. Specifically, the various projects worked on by the Defendants are necessary in order to determine what the potential earnings history would be for the Plaintiff.  In that [American Paving] does both public and private contracts, the potential wages of the employees will vary based upon that type of contract.  In that Plaintiff did not work for Defendant for a prolonged period of time prior to her injury and is medically unable to return to employment with [American Paving], these documents are necessary in order to chart the type of work being done by [American Paving] which would correspondingly affect the salary of its employees.

Dkt. #82, pp.24-25.

Plaintiff's document demand is overly broad.  To the extent that plaintiff seeks this information to calculate damages, the Court notes that defendants have already produced and have been compelled to produce additional information sufficient to enable plaintiff to accurately calculate her damages.  Therefore, plaintiff's motion to compel with respect to this demand is denied.

Second Set of Document Demands #2

This demand seeks "any and all payroll records regarding any project for which [American Paving] contracted with either public or private entity [sic] from 1998 to present."  Dkt. #82, Exh. J.

Defendants objected on the ground that the demand "would require [American Paving] to produce its payroll records for the past five years.  As such, this

demand is overly broad and unduly burdensome." Dkt. #82, Exh. J.  Defendants also

objected on the ground that the demand was not relevant and sought confidential

information.  Dkt. #82, Exh. J.


Plaintiff argues that the payroll records "are necessary in order to chart

the potential earnings histories of comparable employees as to Plaintiff and are

necessary to calculate her damages."  Dkt. #82, p.26.


Defendants shall produce payroll records, redacted as defendants deem

necessary to protect employee confidentiality, reflecting wages paid to employees in

plaintiff's job category or employee classification, or in a category or classification from

which a person in plaintiff's position could be promoted, from 1998 through the present.


<u>Second Set of Document Demands #3</u>

This demand seeks "any and all training documents for trainees . . . for

each project in which [American Paving] was either a contractor or sub-contractor for

the period of 1994 to present."  Dkt. #82, Exh. J.


Defendants objected to this demand as irrelevant and unduly burdensome

in that it  "would require [American Paving] to produce training records for its employees

over the past nine years."  Dkt. #82, Exh. J.

Plaintiff argues that

One of the critical issues in this case is with regard to the Defendants assertion that Plaintiff was a trainee and participated in a trainee program which required her to be performing the work that she was engaged in on the day that she experienced a ruptured aneurism.  One of the allegations by the Plaintiff is that the Defendants did not make other individuals who were hired as "flag persons" perform the work that was required of Plaintiff.  As such, Plaintiff seeks to have trainee documents regarding other similarly situated employees provided so that an assessment can be made whether Defendants treated Plaintiff in a disparate manner.

Dkt. #82, p.27.

Although the training records are relevant to enable plaintiff to assess whether she was treated differently from other employees hired under similar circumstances, defendants shall only be required to produce such records for the two years preceding plaintiff's claims of discrimination and two years subsequent to plaintiff's claims of discrimination.

Second Set of Document Demands #4

This document demand seeks "all AAP-26 Monthly Turn-In Progress Reports for all projects in which [American Paving] was a contractor or a sub-contractor with the State of New York from 1994 to the present."  Dkt. #82, Exh. J.

Defendants objected to this demand as irrelevant and unduly burdensome in that it "would require [American Paving] to produce all 'monthly turn progress reports' over the past nine years."  Dkt. #82, Exh. J.

Plaintiff argues that

the issue of the New York State training program is critical in
this case.  The documents sought in this request are forms
which require an employer to turn in progress reports
regarding the training of individuals participating in the
training program.  Plaintiff is alleging that the Defendants
treated Plaintiff differently than other similarly situated
individuals with respect to this training program.  As such,
Plaintiff seeks to see these specific documents in that they
specifically detail and document the training received by
other employees participating in this program.

Dkt. #82, p.28.


Although the 'monthly turn progress reports' are relevant to enable plaintiff

to assess whether she was treated differently from other employees hired under similar

circumstances, defendants shall only be required to produce such records for the two

years preceding plaintiff's claims of discrimination and two years subsequent to

plaintiff's claims of discrimination.


Second Set of Interrogatories #1

_____This interrogatory seeks the name, address, telephone number,

compensation and training of all employees who worked on any projects in which

American Paving contracted or subcontracted from 1994 through the present.  Dkt. #82,

Exh. D.


Defendants objected to this interrogatory as irrelevant and overly

burdensome "on the grounds that it would require [American Paving] to identify every

contract [it] has entered into and every person it has employed in the past nine years."
Dkt. #82, Exh. K.

Plaintiff argues that this information is relevant to the calculation of
plaintiff's damages.  Dkt. #82, p.30.

_____This interrogatory is clearly overbroad.  Defendants have already
produced and have been compelled to produce additional information sufficient to
enable plaintiff to accurately calculate her damages.  Therefore, this request is denied.

### Defendants' Motion to Preclude Expert Testimony, Resolve Fee Dispute & Compel Discovery

#### Discovery

Defendants seek an Order compelling plaintiff to respond to Defendants'
First Set of Interrogatories; Defendants' First Request for Production of Documents;
Defendants' Demand for Medical, Educational & Employment Records and Collateral
Sources; and Defendants' Second Set of Interrogatories.  Dkt. #88, ¶ 1.[3]

#### Waiver of Objections

As an initial matter, defendants argue that plaintiff's untimely response to
defendants discovery demands resulted in a waiver of any objections to defendants'
discovery demands.  Dkt. #87, p.10.  Accordingly, defendants argue that plaintiff

---

[3] Defendants also sought an Order compelling plaintiff to schedule the deposition of Kevin
Bujnicki and two other physicians (Dkt. #88), however, this dispute has been resolved.  Dkt. #107, ¶ 56.

"should not be permitted to withhold any responsive discovery, privileged or otherwise."
Dkt. #87, p.10.

Plaintiff responds that her *de minimus* delay of 18 days should not prevent
her from asserting objections to defendants discovery demands, particularly with
respect to claims of privilege.  Dkt. #99, pp.7-9.  Plaintiff also notes that defendants'
responses to plaintiff's discovery demands were 19 days late.  Dkt. #100, ¶ 18.

"The law is well settled that a failure to assert objections to a discovery
request in a timely manner operates as a waiver."  *Eldaghar v. City of New York Dep't
of Citywide Admin. Servs*., 2003 WL 22455224, at *1 (S.D.N.Y. 2003) (collecting
cases).   However, it is equally "well settled that the protections and sanctions found in
the discovery rules are not absolute and contemplate use of judicial discretion."  *Davis
v. City of New York,* 1988 WL 42189, at *2 (S.D.N.Y. 1988).

In the exercise of this discretion, the Court will not consider plaintiff's
objections to defendants' discovery demands waived as a sanction for plaintiff's
untimely responses.  However, both parties are advised to adhere to the deadlines
imposed by the Federal Rules of Civil Procedure and to request the professional
courtesy of a minimal extension of such deadlines from opposing counsel when
appropriate.

Interrogatory #1

Interrogatory #1 seeks the name and address of each and every witness and the substance of the testimony each such witness will provide with respect to plaintiff's claims.  Dkt. #92, Exh. H.  In response, plaintiff failed to specify any individual, but instead referred to her Fed. R. Civ. P. 26 (a) disclosures and to the transcripts of deposition testimony.  Dkt. #92, Exh. H.

Defendants complain that plaintiff referred defendants to deposition transcripts and documents "which are not the business records of the Plaintiff." Dkt. #92, ¶ 18.

Defendants are entitled to a response to this interrogatory.  Accordingly, defendants motion to compel is granted with respect to interrogatory #1.

Interrogatory #2

Interrogatory #2 of Defendants' First Set of Interrogatories, served February 18, 2002, requested the following:

2.     State whether Plaintiff has consulted any person
       qualified as an expert whom you plan to call as a
       witness at trial in this action, including without
       limitation any "treating physicians."  If so,
       a.     identify such person;
       b.     describe the expert's qualifications, including a list of
              all publications authored by the witness within the
              preceding 10 years;
       c.     describe the data or other information considered by
              the witness in forming the opinions;
       d.     state the compensation to be paid for the study and
              testimony;

e.    List any other cases in which the witness has testified
      as an expert at trial or by deposition, and the party on
      whose behalf the witness testified, within the
      preceding four years;

f.    state whether the expert has submitted a
      written report, and, if so, the person who
      presently has custody of the report and state (i)
      the date of the report and (ii) the last known
      business address for each expert;

g.    state in reasonable detail the subject matter on
      which each expert is expected to testify at trial,
      the substance of the facts and opinions on
      which each expert is expected to testify at trial
      and state the grounds for such expert opinion
      or opinions.

Dkt. #88, Exh. A.


Plaintiff responded to this interrogatory as follows:

Plaintiff objects to this request as seeking information which
Plaintiff is not required to provide Pursuant [sic] to the
Federal Rules of Civil Procedure, which seeks information in
the possession of non-parties and which is ascertainable
through the depositions which have already been scheduled
by Defendants of said witnesses.  However, without waiving
these objections, Plaintiff has transmitted the fee schedules
or provided the fee information for deposition testimony for
those treating medical providers noticed pursuant to
26(a)(2)(A).

Dkt. #92, Exh. H.


Defendants are attempting to obtain expert witness reports from plaintiff's

"treating physicians" under the guise of interrogatories.  However, plaintiff's treating

physicians are not parties to this action and cannot be compelled to respond to

interrogatories.  *See* Fed. R. Civ. P. 33(a) ("any party may serve upon any other party

written interrogatories"); *see also Lehman v. Kornblau*, 206 F.R.D. 345, 346 (E.D.N.Y.

2001) ("Any interrogatories . . . served on non-parties are a nullity. Discovery of non-parties must be conducted by subpoena pursuant to Fed. R. Civ. P. 45").  Therefore, plaintiff is only obligated to respond to subparagraphs (a), (d) and (f) of this interrogatory.  All other information being sought with respect to expert witnesses is to be obtained pursuant to and in accordance with Fed. R. Civ. P. 26(a)(2).

Interrogatory #5

Interrogatory #5 asks plaintiff to

State the amounts of all wages, income, salaries, commissions, bonuses, fees or other compensation earned or received by Plaintiff since she left her employment with [American Paving] and identify the source of each said amount.

Dkt. #92, Exh. H.  In response, plaintiff referred defendants to her Fed. R. Civ. P. 26(a) disclosures and documents attached to Plaintiff's Response to Defendants' First Request for Production of Documents.  Dkt. #92, Exh. H.  Defendants complain that in response to this interrogatory, plaintiff referred defendants to deposition transcripts and documents "which are not the business records of the Plaintiff."  Dkt. #92, ¶ 18.

Defendants are entitled to a response to this interrogatory.  Accordingly, defendants motion to compel a response to interrogatory #5 is granted.

Interrogatory #6

Interrogatory #6 asks plaintiff to

Identify each and every person with whom Plaintiff or her attorney allegedly discussed the alleged harassment and/or

28

> discrimination and/or other alleged wrongful conduct
> complained of in her . . . complaint.

Dkt. #92, Exh. H.  In response, plaintiff objected to the interrogatory

> as being vague, overly broad, seeking information protected
> by the attorney-client privilege and work-product privilege
> and seeking information which Plaintiff testified to in her
> depositions on December 11, 2002, and December 12,
> 2002.  However, without waiving this objection, Plaintiff
> complained of harassment, discrimination, and retaliation to
> Defendants Berberich and Michael Jantzi during her
> employment with Defendants.

Dkt. #92, Exh. H.  Defendants complain that in response to this interrogatory, plaintiff

referred defendants to deposition transcripts and documents "which are not the

business records of the Plaintiff."  Dkt. #92, ¶ 18.


Plaintiff may not rely upon vague references to deposition transcripts to

satisfy her obligations to respond to defendants' interrogatories.  However, defendants

are not permitted to inquire as to discussions with and interviews by plaintiff's counsel.

Accordingly, defendants' motion to compel is granted with respect to discussions had

by plaintiff with persons other than her attorney.


Document Demand #3

Document demand #3 seeks "[a]ll job performance reviews or evaluations

of Plaintiff whether employed by [American Paving] or any other employer."  Dkt. #92,

Exh. H.   Subject to objections, plaintiff responded that she "has provided authorizations

for Defendants to obtain her employment records."  Dkt. #92, Exh. H.  Defendants

complain that plaintiff must also produce copies of employment records in her

possession.  Dkt. #106, p.15.

Notwithstanding the fact that plaintiff has provided defendants with an authorization to obtain the requested records from their source, plaintiff is required to produce all responsive documents in her possession.  Accordingly, defendants motion to compel a response to this document demand is granted.  Moreover, to the extent that plaintiff is claiming privilege, plaintiff shall produce a privilege log pursuant to Fed. R. Civ. P. 26(b)(5).

Document Demand #6

Document demand #6 seeks

A copy of all written notes or tape or video recordings and/or transcripts of any recordings of conversations or remarks made by Plaintiff and/or any of the Defendants and/or any non-parties which are in the possession and control of Bujnicki or her attorney concerning the allegations or events that form the basis of this lawsuit.  This includes, but is not limited to, any tape recordings of Plaintiff's telephone-answering machine and any tape or video recordings made by Plaintiff using any recording device or any recording or notes in writing or otherwise [sic] statements by any persons in any way relating to the allegations or events that form the basis of this lawsuit.

Dkt. #92, Exh. H.  Plaintiff responded as follows:

Plaintiff objects to this request as being vague and overly broad and as seeking documents which are protected by the attorney-client privilege and work-product privilege. However, without waiving these objections, Plaintiff is not in possession of any tape or video recordings or any statements of any Defendant or non-party.

Dkt. #92, Exh. H.

Defendants' motion to compel production of documents protected by the attorney-client or attorney work-product privilege, such as attorney notes of meetings with witnesses, is denied.  However, plaintiff shall produce a privilege log pursuant to Fed. R. Civ. P. 26(b)(5) with respect to any documents she is withholding on the basis of privilege.

Document Demand #9 and #10

Document Demand #9 seeks

All documents reflecting or relating to monies earned or received by Plaintiff since she ceased working for [American Paving] to the present, specifically including, but not limited to, check stubs, pay stubs, federal, state, and local income tax returns (and all schedules and attachments thereto.)

Dkt. #92, Exh. H.  In response, plaintiff stated that she

has produced appropriate W-2 and Wage Statements as a part of Plaintiff's initial disclosures pursuant to Rule 26(a)(2)(1).  See also, documents attached hereto as Exhibit A.

Dkt. #92, Exh. H.

Document demand #10 seeks "[a]ll federal and state income tax returns for tax years beginning in 1997 to the present, including, but not limited to, schedules, documents, and attachments thereto, including Plaintiff's W2 forms."  Dkt. #92, Exh. H.  Plaintiff responded to this document demand by referring to her response to document demand #9.

Defendants complain that plaintiff has refused to provide copies of her tax returns, which defendants allege are relevant to plaintiff's claim of emotional distress due to her alleged inability to contribute to the support of her family.  Dkt. #92, ¶ 19. Defendants also seek information regarding the earnings of plaintiff's husband to assess whether his income was contributing to plaintiff's complaints of depression as a result of her "family's" financial difficulties.  Dkt. #107, ¶ 44.

Tax returns are protected by a "qualified privilege."  *Gattengno v. Price Waterhouse Coorpoers, LLP*, 205 F.R.D. 70, 71 (D. Conn. 2001).  Accordingly, tax returns need not be disclosed unless: (1) it clearly appears that they are relevant to the subject matter of the action or to the issues raised thereunder; and (2) there is a compelling need for their disclosure because the information contained in the tax returns is not otherwise readily obtainable.  *Id., quoting Cooper v. Hallgarten & Co.*, 34 F.R.D. 482, 484 (S.D.N.Y. 1964); *see also Land Ocean Logistics, Inc. v. Aqua Gulf Corp.*, 181 F.R.D. 229, 238-239 (W.D.N.Y. 1998)*.

In the instant case, plaintiff's earning capacity is relevant to plaintiff's claim of emotional distress stemming from her alleged inability to contribute to her family's financial well-being and to assess plaintiff's claim of diminished earning capacity. However, disclosure of plaintiff's W-2 and Wage Statements are sufficient to enable defendants to assess plaintiff's earnings.   Accordingly, to the extent that plaintiff has not already done so, plaintiff is hereby ordered to produce her W-2 Statements from

1997 through the present.[4]  As plaintiff's husband is not a party to this action, the Court will not order disclosure of his W-2 statements.  Defendants' motion to compel disclosure of plaintiff's income tax returns is denied.

Document Demands ##11-13

Document demands ##11-13 seek documents relating to plaintiff's attempts to obtain employment subsequent to her employment with American Paving, including resumes or applications.  Dkt. #92, Exh. H.  Plaintiff responded by referring defendants to her disclosure of W-2 statements pursuant to document demand #9 and unspecified documents produced in plaintiff's initial disclosures.  Dkt. #92, Exh. H.

Defendants complain that plaintiff has failed to indicate which documents previously disclosed are responsive to these demands.  Dkt. #92, ¶ 20.

Plaintiff is directed to supplement her response to document demands #11-13 to clearly identify the documents which are responsive to these demands.

Document Demand #14

Document demand #14 seeks "[a]ll documents reflecting, referencing, relating to or concerning any alleged restrictions of any kind on Plaintiff's ability to obtain or hold employment since she ceased working for [American Paving]."  Dkt. #92,

---

[4] Defendants complain that plaintiff only produced earnings records for 2002, even though she admits that she has been employed since 2000.  Dkt. #92, ¶ 19.  Plaintiff responds that she produced W-2 statements for the years 1998 through 2001 as part of her initial disclosures.  Dkt. #100, ¶ 47.

Exh. H.   Plaintiff responded by referring defendants to plaintiff's medical records.
Dkt. #92, Exh. H.

Defendants complain that plaintiff has failed to identify which medical records are responsive to this demand.  Dkt. #92, ¶ 20.  Defendants also complain that their review of plaintiff's medical records do not reveal any restrictions upon plaintiff's ability to obtain or hold employment after April, 1999.  Dkt. #92, ¶ 20.  Accordingly, defendants "request that this Court preclude Plaintiff from offering any evidence of any restrictions of any kind on Plaintiff's ability to obtain or hold employment after April of 1999."  Dkt. #92, ¶ 20.

Plaintiff is ordered to specifically identify any documents which indicate any limitations upon plaintiff's ability to work.  However, the absence of any such documents does not establish the absence of such limitations as a matter of law, and therefore, there is no legal basis for defendants' request to preclude evidence.  Should plaintiff attempt to introduce documents at trial which have not been disclosed to defendants, the trial judge will be in the best position to fashion an appropriate remedy or sanction at that time.

Document Demands #15, #16, #18, #38, #39

These demands seek documents relating to any claim by plaintiff for unemployment compensation, disability benefits, workers' compensation, and social security disability benefits.  Dkt. #92, Exh. H.  Subject to objections, plaintiff produced approximately 60 pages of documents in response to these demands.  Dkt. #92, Exh H.

Defendants claim that plaintiff has withheld documents which are critical in assessing plaintiff's claim for damages.  Dkt. #92, ¶ 23.  For example, defendants complain that plaintiff "failed to produce her application for social security disability benefits, or any documents she received indicating the action taken on that application," including a notice that plaintiff submit to a medical examination by Dr. Gerardo "regarding depression" or any report prepared by Dr. Gerardo.   Dkt. #92, ¶ 23.  Defendants also note the plaintiff failed to identify Dr. Gerardo as a medical provider.  Dkt. #92, ¶ 23.

Plaintiff responds that she has provided all the documents that she has in her possession.  Dkt. #100, ¶ 53.  With respect to Dr. Gerardo, plaintiff states that she did not recall this doctor and does not possess any records from him.  Dkt. #100, ¶ 54.

The Court accepts plaintiff's representation that she does not possess any additional documents responsive to these demands and trusts that the plaintiff will supplement her response if such documents are hereafter found.

Document Demand #17

Document demand #17 seeks "[c]opies of all Plaintiff's elementary, middle school, high school, college, university, post graduate, professional or vocational or trade school transcripts and/or certificates and/or files and an authorization for Defendants to obtain access to any such files from such educational institutions."  Dkt. #92, Exh. H.   Subject to objections, including an objection of attorney work-product

35

privilege, plaintiff "provided authorizations for Defendants to obtain her educational records."  Dkt. #92, Exh. H.

Defendants complain that the "fact that defendants might be able to obtain the requested documents from a third party does not relieve the Plaintiff of her obligation under Rule 34 to produce the records in her possession."  Dkt. #92, ¶ 24. Plaintiff responds that she need not disclose records for which defendants have access. Dkt. #100, ¶ 55.

Notwithstanding the fact that plaintiff has provided defendants with an authorization to obtain the requested records from their source, plaintiff is required to produce all responsive documents in her possession.  Accordingly, defendants motion to compel a response to this document demand is granted.  Moreover, to the extent that plaintiff is claiming privilege, plaintiff shall produce a privilege log pursuant to Fed. R. Civ. P. 26(b)(5).

Document Demands #33, #34, #35

Document demand #33 seeks

All documents received by Plaintiff or her attorneys in response to any subpoenas or other requests for production of documents made to the Equal Employment Opportunity Commission and/or the New York State Division of Human Rights or any other administrative tribunal or agency, including without limitation the Workers' Compensation Bureau [sic] or the Department of Transportation.

Dkt. #92, Exh. H.  Document demand #34 seeks

> All documents received by Plaintiff and/or her attorneys from the Equal Opportunity Commission and/or New York State Division of Human Rights in connection with any charge of discrimination filed by Plaintiff with such agency and/or received from any other administrative tribunal or agency, including without limitation the Workers' Compensation Bureau [sic] or the Department of Transportation.

Dkt. #92, Exh. H.   Document demand #35 seeks

> All documents received by Plaintiff or her attorneys in response to any subpoenas or other formal or informal requests for production of documents made to a person or entity relating in any respect to the matters at issue in this action.

Dkt. #92, Exh. H.

Subject to objections, including attorney work-product privilege, plaintiff responded to this demand by producing the Charge of Discrimination with Supporting Affidavit filed with the EEOC as well as the EEOC's Notice of Right to Sue and by referencing documents she produced in response to defendants' demand for documents relating to plaintiff's claim for unemployment compensation and/or disability benefits, including Workers' Compensation, as well as documents disclosed by her in Plaintiff's First and Second Initial Disclosures Pursuant to Rule 26(a)(1).  Dkt. #92, Exh. H.

Defendants complain that there can be no privilege with respect to documents exchanged with or received from third parties.  Dkt. #92, ¶ 21.  Plaintiff argues that she should not be required to disclose documents received via a Freedom of Information request, *to wit*, Workers' Compensation, New York State Department of

Transportation and EEOC or other administrative agency documents, because such documents are equally available to the defendants, who were party to the Workers' Compensation and EEOC proceedings, via their own Freedom of Information request. Dkt. #99, p.9.  Plaintiff also argues that she should not be compelled to reveal the thought process of her counsel by disclosing documents which counsel has obtained as part of her own investigation of this case.  Dkt. #99, p.10.


        Notwithstanding the fact that defendants can obtain the requested documents from their source, plaintiff is required to produce all responsive documents in her possession.  Plaintiff's counsel does not explain how documents obtained from administrative agencies such as the EEOC or the Workers' Compensation Board might reveal her attorney's thought process with respect to this case.  Accordingly, defendants motion to compel a response to this document demand is granted.  To the extent that plaintiff does have a viable claim of privilege, plaintiff shall produce a privilege log pursuant to Fed. R. Civ. P. 26(b)(5).


Document Demand #40

        Document demand #40 seeks

        All documents reflecting or relating to any conversations or
        communications, written or oral, between Plaintiff or her
        representatives (including any attorneys) and [American
        Paving], [American Paving's] employees, or [American
        Paving's] former employees regarding Plaintiff's employment
        with [American Paving], Plaintiff's termination from
        employment with [American Paving], Plaintiff's illness on the
        last day of her employment with [American Paving] or this
        lawsuit.

Dkt. #92, Exh. H.   Plaintiff objected to this demand as seeking documents which are protected by the attorney-client privilege, work-product privilege and/or were prepared in anticipation of litigation.  Dkt. #92, Exh. H.

Defendants seeks a privilege log with respect to those documents plaintiff claims are protected so that they may assess whether the privilege has been properly invoked.  Dkt. #92, ¶ 21.   Plaintiff argues that the only documents to which plaintiff is claiming privilege are "attorney notes of meetings with non-party witnesses." Dkt. #100, ¶ 51.

Plaintiff is ordered to supplement her response to this demand to clearly indicate whether any responsive documents exist with respect to communications by plaintiff.  Defendants shall not be permitted to inquire as to communications by plaintiff's counsel.  To the extent that plaintiff is claiming privilege, she shall produce a privilege log pursuant to Fed. R. Civ. P. 26(b)(5).

Document Demand #41

Defendants complain that plaintiff has refused to provide records relating to her divorce proceeding, which defendants claim are relevant to assessing plaintiff's claim of "mental anguish and emotional distress." Dkt. #92, ¶ 22.

Plaintiff notes that she and her husband have reconciled, but agrees to disclose the Summons with Notice and the Stipulation of Discontinuance, which were

the only documents filed in the action.  Dkt. #100, ¶ 52.  Plaintiff also notes that

defendants questioned her during her deposition regarding her relationship with her

husband and that her husband's deposition is scheduled.  Dkt. #100, ¶ 52.

Plaintiff shall produce the documents filed with the court pursuant to her

divorce proceeding, *to wit*, the Summons with Notice and Stipulation of Discontinuance.

Failure to Provide a Comprehensive Medical Authorization

Defendants complain that plaintiff has limited her medical authorization to

medical providers treating plaintiff subsequent to her aneurysm.  Dkt. #92, ¶ 25.

Defendants assert that they are entitled to medical records prior to the aneurysm so

that they can obtain information regarding any pre-existing conditions.  Dkt. #92, ¶ 25.

Specifically, defendants seek authorizations to obtain the medical records of Dr. Joseph

Monte and Dr. Greco.  Dkt. #92, ¶ 25.

Plaintiff responds that

Defendants seek documents concerning any medical or
psychological treatment of [sic] Plaintiff has ever received.
Plaintiff has provided authorizations to Defendants to obtain
her relevant medical and psychological records.  However,
no authorizations have been provided for any medical care
or treatment which is not relevant in time or which is
unrelated to any condition at issue in this action.

Dkt. #99, p.10.   Plaintiff also states that she "has not waived her physician-patient

privilege with regard to those matters not placed into controversy."  Dkt. #99, p.10.

Plaintiff claims both physical and psychological injuries, including a claim that defendants' conduct caused her to suffer  an aneurysm.  In light of plaintiff's claims, defendants have "a clear right to make a searching inquiry into plaintiff's past for the purpose, among others, of showing that her emotional and physical distress was caused, at least in part, if not in whole, by events and circumstances that were in no way 'job related.'"  *Lowe v. Philadelphia Newspapers, Inc.,* 101 F.R.D. 296, 298 (E.D. Pa. 1983); *see Potter v. West Side Transportation, Inc.,* 188 F.R.D. 362, 364 (D. Nev. 1999) ("To determine the extent of emotional injury from the accident, it is necessary to determine what their emotional health was before the accident, what it is now, and whether the accident or some other incident or situation is the cause . . ."); (*Bridges v. Eastman Kodak Co.*, 850 F. Supp.216, 223 (S.D.N.Y. 1994) ("since plaintiffs seek to prove that they have suffered emotional distress as a result of sexual harassment . . . defense counsel has a right to inquire into plaintiffs' pasts for the purpose of showing that their emotional distress was caused at least in part by events and circumstances that were not job related.").

The court is sensitive, however, to the unlimited time frame of defendants' demand for medical records.  Accordingly, plaintiff is ordered to provide medical authorizations for release of medical records from any primary care physician or specialist plaintiff's primary care physician may have referred plaintiff to and from any psychologist or therapist plaintiff may have sought treatment from within the two years preceding plaintiff's employment with defendants.

<u>Expert Fees</u>

Defendants seek an order compelling plaintiff to pay the expert witness fees pertaining to the depositions of Dr. Gibbon, Dr. Reichert, Dr. Czarnecki and Dr. Michotek because plaintiff's failure to provide discovery and to produce expert reports pursuant to Fed. R. Civ. P. 26(a)(2)(B) necessitated depositions of these doctors and impaired defendants' ability to conduct the deposition.  Dkt. #88, ¶ 6.

Plaintiff responds that she has no obligation to provide an expert witness report with respect to plaintiff's treating physicians and that plaintiff should not be forced to bear the costs of defendants' discovery of plaintiff's treating physicians.  Dkt. #100, ¶¶ 23-24.

Despite being given multiple extensions on the deadline for disclosing expert witness reports pursuant to Fed. R. Civ. P. 26(a)(2)(B), and having been clearly advised of the consequences of her failure to do so, plaintiff has steadfastly maintained that she has not "retained or specially employed" any medical providers to provide expert testimony in this case and that any expert medical testimony will be presented by her treating physicians.  *See* Dkt. ##52, 64, 67, 72.  The deadline for providing expert disclosures for any such expert witnesses has passed.  Dkt. #72.  Accordingly, plaintiff's ability to present expert medical opinion testimony is limited to "the physician's personal knowledge of the examination, diagnosis, and treatment of a patient, and not on information acquired from outside sources."  *Brundidge v. City of Buffalo*, 79 F. Supp.2d 219, 224 (W.D.N.Y. 1999).   *See* Dkt. #67.

Defendants' decision to depose plaintiff's medical providers rather than to rely upon their medical records was a strategic decision for which defendants must bear the expense.   To the extent that defendants decision to depose plaintiff's medical providers resulted in the discovery that plaintiff's treating physicians have no opinions to offer regarding causation of plaintiff's injuries or that plaintiff's medical providers were not actually treating physicians or that they were treating physicians but that some or all of their opinions are based upon information learned subsequent to their treatment of plaintiff,[3] defendants have gained valuable information to enable them to assess plaintiff's case and their own need for expert witness testimony and to object to testimony which goes beyond the scope of the medical providers' treatment of plaintiff. Plaintiff should not be compelled to bear the expense for defendants' discovery of such information.   Accordingly, defendants' motion to compel plaintiff to pay the witness fees for the depositions of plaintiff's medical providers is denied.

<u>Preclusion</u>

<u>Dr. Czarnecki</u>

Defendants seek to preclude the testimony of Dr. Czarnecki, PhD. on the grounds that she is not plaintiff's treating physician and no expert report was produced as required pursuant to Fed. R. Civ. P. 26(a)(2)(B).  Dkt. #88, ¶ 5.  Defendants allege that plaintiff saw Dr. Czarnecki on one occasion subsequent to the commencement of

---

[3] Despite plaintiff's conscious decision to rely solely upon the testimony of treating physicians, plaintiff's counsel faxed plaintiff's school records and mailed a report from another treating physician to Dr. Czarnecki so that she could assess "whether [plaintiff's] depression was directly related to the aneurysm" subsequent to her treatment of plaintiff.  Dkt. #107, Exh. C, pp. 45-55, 69-72.

this civil action and that Dr. Czarnecki did nothing more than recommend that plaintiff

see a neurologist and undergo counseling.  Dkt. #88, ¶ 5.

In a supplement to their motion to preclude the testimony of Dr.

Czarnecki, defendants allege that Dr. Czarnecki testified at her deposition that she was

unable to render an opinion as to any causal connection between plaintiff's aneurysm

and plaintiff's mental health because she did not learn the onset date of plaintiff's

depression during the course of her treatment of plaintiff on August 10, 2000,

September 28, 2000 and October 16, 2000.  Dkt. #92, ¶ 6.  Dr. Czarnecki testified that

she did not obtain this information until March of 2003 when, in preparation for her

deposition, plaintiff's counsel mailed her a report prepared by Dr. Reichert.  Dkt. #107,

Exh. C, pp. 54-55.  Plaintiff's counsel also apparently faxed plaintiff's education records

to Dr. Czarnecki so that she could attempt to identify the extent to which plaintiff's

difficulties resulted from a pre-existing condition or the aneurysm.  Dkt. #107, Exh. C,

pp. 50-51.   Dr. Czarnecki admitted at her deposition that she had no opinion with

respect to whether or not these "difficulties" were the result of a pre-existing condition or

the aneurysm at the time she was providing treatment to plaintiff.  Dkt. #107, Exh, C,

p. 70.

Defendants' allegations are insufficient to establish that Dr. Czarnecki was

"retained or specifically employed to provide expert testimony in the case."  Fed. R. Civ.

P. 26(a)(2)(B).  To the contrary, defendants concede that Dr. Czarnecki examined

plaintiff on three occasions in 2000 and that Dr. Czarnecki testified that she first spoke

with plaintiff's counsel in March of 2003.  Dkt. #92, ¶ 6.  Dr. Czarnecki's report of her

examination of plaintiff indicates that she was seen at the request of plaintiff's primary

care physician.  Dkt. #88, Exh. E.  Accordingly, defendants have not established any

basis to preclude plaintiff from questioning Dr. Czarnecki as to her treatment of plaintiff.

To the extent that plaintiff attempts to introduce information or opinions which go

beyond the scope of Dr. Czarnecki's treatment of plaintiff, the trial judge will be in the

best position to address such matters at that time.  Accordingly, defendants' motion to

preclude Dr. Czarnecki from testifying at trial in this matter is denied without prejudice.


Dr. Reichert

        Defendants seek to preclude the testimony of Dr. Reichert because he

does not have sufficient knowledge of plaintiff's circumstances at work to offer an

expert opinion on how her treatment at work could affect her alleged depression and

other alleged mental injuries.  Dkt. #92, ¶ 11.   At his deposition, Dr. Reichert confirmed

that his only interaction with plaintiff was an initial evaluation following referral for

depression; plaintiff did not become his patient.  Dkt. #92, ¶ ¶ 10, 11.  Given this limited

information, Dr. Reichert allegedly testified that "he has no opinion to give regarding any

alleged treatment in the workplace; has no opinion as to whether the Plaintiff

experienced sexual harassment in the workplace and has no opinion as to whether any

alleged depression or other alleged mental injuries arose from any alleged

discrimination in the workplace."  Dkt. #92, ¶ 11.  However, defendants concede that

during the course of his evaluation of plaintiff, Dr. Reichert determined that plaintiff

"grieves the loss of her job" and that he determined that "the patient's primary

45

difficulties with depression at the time of her presentation were reactive in nature, that her depression was a function of her grieving the losses and functioning that were the result of her neurological injury . . . including the loss of her job."  Dkt. #92, ¶ 11; Dkt. #107, ¶ 24.

There is no dispute but that Dr. Reichert conducted an initial evaluation of plaintiff with the expectation that she would become his patient.  Thus, however limited that initial evaluation was, it was conducted by Dr. Reichert as a treating physician.  Accordingly, defendants have failed to demonstrate that Dr. Reichert should be precluded from testifying regarding the treatment provided and the opinions formed during the course of that evaluation.  To the extent that plaintiff attempts to elicit testimony which goes beyond the scope of Dr. Reichert's examination and treatment of plaintiff, the trial judge will be in the best position to address such matters at that time.  Accordingly, defendants' motion to preclude Dr. Reichert from testifying at trial in this matter is denied without prejudice.

### Plaintiff's Motion for Leave to Move to Compel

Plaintiff seeks leave to move to compel responses to her Third Set of Interrogatories and Third Request for Production of Documents in the event that defendants responses to these requests, which are due prior to the current case management order's discovery deadline but subsequent to the deadline for motions to compel, are incomplete.  Dkt. #91.

Defendants respond that there is no need for the Court to afford plaintiff leave to file such a motion, as defendants have responded appropriately to plaintiff's most recent discovery demands.  Dkt. #105.

Plaintiff's motion for leave to move to compel is denied without prejudice. Any outstanding discovery disputes will be addressed by the undersigned at a status conference upon written request of either party.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to compel discovery responses (Dkt. #82), is granted in part and denied in part; defendants' motion to compel discovery responses (Dkt. #86), is granted in part and denied in part; defendants' motion to compel plaintiff to pay the witness fees for depositions of plaintiff's medical witnesses (Dkt. #86), is denied; defendants' motion to preclude the testimony of plaintiff's medical witnesses at trial (Dkt. #86), is denied without prejudice; and plaintiff's motion for leave to move to compel discovery responses (Dkt. #103), is denied without prejudice.

**SO ORDERED.**

DATED:     Buffalo, New York
           February 25, 2004


**s/ H. Kenneth Schroeder, Jr.**
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**